GEO. W. SWAFFORD, Respondent, v. WILLIAM E. SPRATT, Appellant.

93   631<br>95   ³209

### Kansas City Court of Appeals, April 7, 1902.

1. **Emblements:** FRUCTUS INDUSTRIALES: VENDIBLE: WHEAT. Annual crops are personal chattels distinct from the land and capable of sale; and so a growing wheat crop may be sold.

2. **Frauds and Perjuries:** DELIVERY: ACCEPTANCE: EVIDENCE: AGENT: JURY QUESTION. The statute of frauds does not prohibit verbal contracts, but as to personalty requires, in addition to parol proof of sale, evidence of delivery or part payment; and whether delivery and acceptance has been effected are questions for the jury as is also the question whether a party is acting as an agent or in his own behalf; and the evidence in the record is sufficient to send these questions to the jury.

3. **Trial Practice:** INSTRUCTIONS: COVERING THE CASE. Instructions are considered and held to cover the case although not entirely harmonious, but not fatally inharmonious under the later ruling of the Supreme Court, since, taken together, the full law of the case can be ascertained from them.

4. **Damages:** EXCESSIVE: REMITTITUR. An excessive verdict is corrected and a remittitur permitted.

Appeal from Buchanan Circuit Court.—*Hon. W. K. James, Judge.*

REVERSED AND REMANDED, *nisi.*

*J. F. Woodson* and *C. F. Strop* for appellant.

(1) The demurrer to the evidence should have been given, first because there was no delivery; second, because there was no acceptance. Cunningham v. Ashbrook, 20 Mo. 553; Emmel v. Hayes, 102 Mo. 186; Wainscott v. Kellogg,

84 Mo. App. 621; Vincent v. Veiths, 60 Mo. App. 9. (2) The contract, not having been in writing, was void, because of the statute of frauds. Growing crops are within the above rule. State v. Durant, 69 Mo. App. 390; Palmer v. Elsberry, 79 Mo. App. 570; Wainscott v. Kellogg, 84 Mo. App. 621. (3) The first instruction given for plaintiff is erroneous because it undertakes to instruct upon the whole case and entirely ignores the defenses raised. Instructions which cover the whole case and ignore the defense or theory of the defense, are reversible error. Flynn v. Union Bridge Co., 42 Mo. App. 529; Voegeli v. Pickle Co., 49 Mo. App. 643; Hohstadt v. Daggs, 50 Mo. App. 240; Evers & Hunt v. Shumaker, 57 Mo. App. 454; Carder v. Primm, 60 Mo. App. 423; Walker v. Ins. Co., 62 Mo. App. 209; Linn v. Bridge Co., 78 Mo. App. 111 (l. c. 118); Westheimer v. Giller, 84 Mo. App. 126; Link v. Westerman, 80 Mo. App. 592. (4) The fact that the court gave, for defendant, instructions covering the defenses does not cure the error in plaintiff's instruction No. 1. Flynn v. Bridge Co., supra; Voegeli v. Pickle Co., supra; Carter v. Primm, supra; Linn v. Massillon, supra; Hohstadt v. Daggs, supra. (5) Plaintiff knew or ought to have known that defendant was acting as agent of the Duncan heirs. It is sufficient if the plaintiff had knowledge of such facts as would put him upon inquiry. Rhea v. Mfg. Co., 81 Mo. App. 400; Huston v. Tyler, 140 Mo. 252.

*Kendall B. Randolph* for respondent.

(1) The verdict is unquestionably for the right party. Fulkerson v. Long, 63 Mo. App. 268. (2) The instructions taken as a whole fairly present the issue and are in fact more favorable to the appellant than is justified by the law. Spillane v. Railroad, 111 Mo. 555; Karle v. Railroad, 55 Mo. 476; Meyer v. Railroad, 59 Mo. 223; Reardon v. Railroad, 114 Mo. 384; McGrew v. Railroad, 109 Mo. 582; Minter v.

Hdw. Co., 50 Mo. App. 177. (3) The appellant's learned counsel seem to think that because appellant had been agent for the farm, that respondent was bound to treat him as having no capacity to purchase the products of the farm. The statement of that proposition is its own refutation. (4) Annual crops are personal property and subjects of sale. Holt v. Holt, 57 Mo. App. 272; Hosli v. Yokel, 57 Mo. App. 622; Garth v. Caldwell, 72 Mo. 622.

SMITH, P. J.—This is an action which was begun before a justice of the peace, on an account which contained the following items:

Plowing 11 acres of land at $1.00 per acre.$  11.00
Selling growing wheat, 32 1-5  acres  by
   plaintiff to defendant at $6.00 per acre   193.20
For sowing clover, about 20 acres......   20.00

In all the sum of....................$224.20

The cause was removed by appeal to the circuit court where the plaintiff had judgment and defendant appealed.

The evidence tends to prove about this state of facts, viz.: That the plaintiff had for several years rented of defendant a certain farm know as the Duncan farm, for which the latter was agent, at an annual rental of six hundred dollars; that the plaintiff, under an annual lease, occupied and cultivated said farm for the cropping year 1900 and supposed he would be able to rent it for the next succeeding crop year, and under. that supposition, and with defendant's permission, plowed up certain parts of it, sowing such parts in wheat and clover— and besides this, he plowed up about eleven acres more that he did not sow at all. Later on, and before the expiration of the plaintiff's term, the defendant went to plaintiff and offered to buy the said growing crops. The plaintiff, after

some reflection, agreed to accept the defendant's offer, and thereupon a parol agreement was entered into whereby the former sold and the latter purchased said crops, the price to be the valuation fixed by two appraisers to be selected by them. It appears that such appraisers were selected by them and that the appraisement of the value of the said crops was made and evidenced by a written certificate signed by them.

A few days after the plaintiff's term had expired, and on March 15, 1901, the defendant wrote the plaintiff that he had rented the Duncan farm to Cartmell and Whitaker, whom he had authorized to take possession, and that as soon as it was agreed as to the number of acres of wheat and broken ground, the money would be paid in accordance with the appraisers' estimate; said letter was signed "W. E. Spratt, Agent." On the next day, the sixth, the plaintiff wrote Tyler & Spratt, the latter being the defendant, that the "price on the clover is yet to be settled before I release the ground."

The defendant testified in effect that he entered into the contract but only as agent for the owners of the Duncan farm. It appears that Cartmell and Whitaker took possession of the farm under the direction of the defendant and harvested the said crop of wheat. The plaintiff paid the six hundred dollars rent for the farm before he surrendered it to Cartmell and Whitaker, but he was never paid anything for the said wheat and plowing by defendant or any one else. There was some evidence as to the reasonable value of the crops so sold, which we shall hereinafter have occasion to further notice.

The defendant interposed a demurrer to the plaintiff's evidence in the court below which was overruled; and this action of the court is assigned by defendant as the principal ground for a reversal of the judgment. Annual crops raised by yearly labor and cultivation are *fructus industriales* and are to be regarded as personal chattels, independent and distinct from the land capable of a sale without regard to whether growing or matured. Glass v. Blazer, 91 Mo. App. 564;

Smock v. Smock, 37 Mo. App. 56; Holt v. Holt, 57 Mo. App. 272; Garth v. Caldwell, 72 Mo. 622. It is clear from the adjudications just cited that a growing crop of wheat is a proper subject of sale.

As has been stated, it is practically conceded that the plaintiff and defendant entered into a contract for the sale of the crop, and the question is, whether such contract, it being verbal is within the prohibition of the statute of frauds (sec. 3419, Revised Statutes 1899). The statute does not prohibit verbal contracts. On the contrary, it presupposes that the terms of the contract rests in parol proof and only requires, in addition to the proof of such contract, evidence of a delivery or part payment under it; it merely renders it necessary for a party claiming under it to show an additional fact to make it valid. The terms of the contract are in the first instance agreed upon and would be binding but for a difficulty which the subsequent acceptance removes and thus establishes the contract *ab initio*. The acceptance is all that gives the parties any rights and it does so by drawing to itself the original contract which then becomes binding in law. Brown on the Statute of Frauds, secs. 337, 338, 339; Cunningham v. Ashbrook, 20 Mo. 553; Emmel v. Hayes, 102 Mo. 186; Wainscott v. Kellogg, 84 Mo. App. 621. To constitute the receipt required by the statute, there must be shown a transfer of the possession of the goods by and from the seller to the buyer, either actually by manual delivery, symbolically by some substituted delivery, or constructively by a change in the nature of the seller's subsequent holding.

A constructive delivery is when, without actual transfer of the goods or their symbol, the conduct of the parties is such as to be inconsistent with any other supposition than that there has been a change in the nature of the holding; and whether such change has taken place is a question for the jury. Browne on Statute of Frauds, secs. 318a, 319. And the question of whether or not there has been an acceptance

is likewise a question for the determination of the jury, and circumstances of the slightest probative force may be submitted to it for that purpose.    Browne on Stat. Frauds, secs. 318a, 319, 321.

The pertinent inquiry now arises, whether or not, in view of the principles to which we have just adverted, there was a delivery and acceptance of the crop.    The plaintiff testified that he turned over the Duncan farm, with the crop growing thereon, to the defendant.    The latter wrote to the former that he had authorized Cartmell and Whitaker to take possession of the farm and that as "soon as it was agreed as to the number of acres of wheat and. broken ground, the money would be paid in accordance with the appraisers' estimate."    At the time this letter was written the plaintiff's term had expired, and the inference is to be deduced from the direction contained in the letter that the plaintiff's possession of the farm and the crop was in the nature of a bailment, for if not, why was it necessary for the defendant to notify him that he had authorized Cartmell and Whitaker to take possession?    The plaintiff's term had ended and he had disposed of his personal property, and was not then claiming to hold possession under his lease.    His possession was that of defendant.

In the same connection, the defendant wrote plaintiff that he would be paid for the crop as soon as the acreage was ascertained, according to the value fixed by the appraisers.    The statements made by defendant in this letter tend to show not only a delivery but an acceptance under the contract.    While the letter was signed by the defendant as agent, it clearly referred to the contract entered into between plaintiff and defendant in the individual capacity of the latter; and besides this, it contained an express recognition of such latter's obligation to pay for the crop.    And the fact was not disputed that the defendant, and those acting under his authority, took possession of the crop and subsequently harvested it; and

whether acting for himself individually under the contract or as agent for the owners of the farm, was for the jury, under all the circumstances, to determine. If he took possession for himself and harvested the crop this was such a fact, taken in connection with the other facts shown by the evidence, as would justify the inference of acceptance. We can not, therefore, say as a matter of law that though the contract was verbal and primarily within the statute of frauds, that there was no evidence tending to prove such a subsequent delivery and acceptance as withdrew it from the operation of the statute and rendered it binding on the parties.

The defendant further objects that the trial court erred in giving the plaintiff's first instruction. It simply told the jury that if the plaintiff sold out to defendant the work and the crops growing on said farm, except the clover, then their verdict should be for the plaintiff, the reasonable value thereof not to exceed, etc., the defendant insists that it is erroneous because it ignores the defenses interposed by him. It is a sufficient answer to this to say that the defendant's instruction E of his series fully submitted to the jury the issue of the statute of frauds, and his further instruction C submitted that of whether or not the contract of sale was entered into by defendant for another and as agent with the knowledge of the plaintiff. The defendant's defenses were fully placed before the jury by these two instructions in such a way as that it could not fail to understand them. The instruction of the plaintiff, with those of the defendant, presented the whole law of the case, and no jury possessing the intelligence we are bound to presume was possessed by that in the present case could possibly be misled as to the issues which were submitted to them for determination. Although the cases in this State are not entirely harmonious, the last expression of the Supreme Court on the subject is to the effect that where a series of instructions taken together contains a complete exposition of the law and covers every phase of the case, the

verdict obtained thereon will be sustained, even though the instructions, when taken separately, may be incomplete and open to objection and criticism; that if, taken together, the full law of the case can be ascertained, they are complete. Hughes v. Railway, 127 Mo. loc. cit. 452-3; Owens v. Railroad, 95 Mo. loc. cit. 181.

According to this rule the defendant's objection is not well taken.

While it appears from the evidence that the jury was justified in finding for the plaintiff, it was not justified in finding for plaintiff, as it did, in the sum of $187.35. According to the testimony of the plaintiff's own witnesses there was but thirty-two acres of wheat, the reasonable value of which was two dollars and fifty cents per acre; and eleven acres of plowed ground to do which was reasonably worth one dollar per acre. If we add eleven dollars charges for the plowing to eighty dollars, the value of the wheat, we find the plaintiff was entitled to recover in the aggregate ninety-one dollars, with interest at six per cent per annum from March 6, 1901.

On account of the excessive and unwarranted amount of the verdict, the judgment will be reversed and cause remanded, but if the plaintiff will within ten days hence enter a remittitur for all of said judgment in excess of ninety-seven dollars, it will be affirmed for the last-named amount; the cost to be equally divided. All concur.